UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ERIK K. BARDMAN, et al.,<br><br>　　　　　Defendants. | Case No. 16-cv-02023-JST<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: ECF No. 44 |

Before the Court is Defendant Erik K. Bardman's motion to dismiss the Tenth Claim for Relief in the Securities and Exchange Commission's ("SEC") First Amended Complaint (FAC). ECF No. 44. The Court will deny the motion.

I.   **FACTS RELEVANT TO THE CURRENT MOTION TO DISMISS**[1]

The SEC brought this case alleging that Logitech International, S.A. ("Logitech") fraudulently overstated its operating income, falsely represented that Logitech's accounting complied with Generally Accepted Accounting Principles ("GAAP"), and misrepresented to Logitech's auditors the condition of Logitech's parts inventory and other material facts. During the relevant time period, Defendant Erik K. Bardman was Logitech's Senior Vice President of Finance and Chief Financial Officer (CFO), and Defendant Jennifer F. Wolf was its Acting Controller.[2]

"On April 27, 2011, Logitech issued a press release concerning its financial results for the fiscal year that ended March 31, 2011." ECF No. 42 (FAC) ¶ 50. On April 28, 2011, Bardman

---

[1] A more detailed factual summary may be found in the Court's order on Defendants' first motion to dismiss. See ECF No. 34.
[2] Wolf has answered the FAC, ECF No. 52, and is not a party to the present motion.

signed a Form 8-K, which included the press release, and timely furnished it to the SEC as required by the Security Exchange Act Rule 13a-11 (Exchange Act) and Item 2.02[3] of the Form 8-K.[4]  Id.  The SEC alleges Logitech's press release failed to properly account for the devaluation of its Revue-related inventory after poor sales. Id. ¶¶ 27-29, 50.  Id.  As a result, its annual operating income was overstated by $30.7 million, or by a factor of more than 27%. Id. ¶ 50, 51.  The SEC also alleges Logitech filed a Form 10-K on May 27, 2011; that Bardman certified that he had reviewed it and that it did not contain any untrue statement or omission of a material fact and that financial statements contained in the report complied with GAAP. Id. ¶ 52.  The SEC alleges that, in fact, statements in both the 8-K and the 10-K were false. Id. ¶ 50, 51.

The SEC alleges that after making material misstatements in the Forms 8-K and 10-K, "Bardman personally profited from his misstatements and omissions by, among other things, receiving a bonus of $331,000 on May 20, 2011 that was based, in part, on Logitech's overstated operating income for fiscal 2011." Id. ¶ 54.  Id. ¶ 98, 102.  Bardman received a bonus of $331,000 on May 20, 2011 "based, in part, on Logitech's overstated operating income for fiscal year 2011." Id. ¶ 54.  Bardman also received an equity-based compensation of $48,660 on November 15, 2011, an equity-based compensation of $45,137 on April 11, 2012, and a bonus of $25,000 paid on April 13, 2012. Id. ¶ 99.  Based on the material noncompliance with different reporting requirements, the SEC alleges that "Bardman was required to reimburse Logitech for (1) any bonus or other incentive-based or equity based compensation received and (2) any profits realized from any sales of Logitech shares during the period May 27, 2011 through May 27, 2012" pursuant to Sarbanes-Oxley Section 304(a) ("SOX 304"). Id. ¶ 101.

## II.     PROCEDURAL BACKGROUND

After the Court denied Bardman's first motion to dismiss in part and granted it in part with leave to amend, ECF No. 34, the SEC filed a First Amended Complaint (FAC) on December 2,

---

[3] Item 2.02 provides instructions for furnishing press releases regarding operations and financial conditions to the SEC.
[4] While the Complaint speaks to both the date of the press release and the date the form was filed, Plaintiff's Opposition clarifies its position that April 27, 2011, the day the press release was issued, is the triggering date. ECF No. 46 at 18, n.16.

2016, ECF No. 42.  The amended complaint asserts several claims, pertinent among them the SEC's Tenth Claim for failure to reimburse under SOX 304 against Bardman.  ECF No. 34, ¶¶ 94-105.  Bardman filed a timely motion to dismiss the Tenth Claim on December 28, 2016, which motion the Court now considers.  ECF No. 44.

### III.     LEGAL STANDARD

Claims of fraud are subject to a heightened pleading standard.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Rule 9(b) also applies to claims that do not require a showing of fraud when the nature of the allegations is "grounded in fraud."  In re Stac. Elecs. Sec. Litig., 89 F.3d 1399, 1404 (9th Cir. 1996).  Defendant Bardman moves under Federal Rules of Civil Procedure Rule 9(b) to dismiss Plaintiff's Tenth Claim on the basis that it fails to allege the surrounding factual circumstances with sufficient specificity.  See ECF No. 44.

To satisfy Rule 9(b), a complaint must supply "the circumstances constituting the alleged fraud" with a description "'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'"  Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001)).  "To meet this standard, [a] [p]laintiff's complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."  Verliant Energy, Inc. v. Barry, No. 14-cv-02443, 2014 WL 4579178, at *1 (N.D. Cal. Oct. 6, 2014) (quoting Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013)).  "Plaintiff need not provide every factual detail supporting its fraud claim—indeed, the SEC is not required to prove its case in the pleadings.  Rather the [complaint] must not make 'conclusory allegations of fraud.'"  SEC v. Ficeto, 839 F. Supp. 2d 1101. 1105 (C.D. Cal. 2011) (quoting Wenger v. Lumisys, Inc., 2 F. Supp. 2d 1231, 1239 (N.D. Cal. 1998)).

Defendant also argues the SEC has failed to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 8(a).  While the Court accepts the material facts alleged in the complaint, along with all reasonable inferences to be drawn from those facts, as true, Navarro v. Block, 250

F.3d 729, 732 (9th Cir. 2001), "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  To be entitled to the presumption of truth, a complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Federal Rules of Civil Procedure Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss, regardless of whether the allegations in a complaint are also subject to Rule 9(b), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); Eclectic Props. East, LLC v. Marcus & Millichap Co., 751 F.3d 990, 995 n.5 (9th Cir. 2014).

## IV.     DISCUSSION

Bardman makes three arguments for dismissal.  First, Bardman argues that the SEC is estopped from bringing a SOX 304 claim based on a press release because the SEC took a contradictory position in a previous case.  ECF No. 44 at 13-16.  Second, Barman argues that the Form 8-K cannot trigger disgorgement pursuant to SOX 304 because it does not fall within the scope of the statute, id. at 16-25, and that the rule of lenity applies because the statute is ambiguous, ECF No. 50 at 17-19.  Third, Bardman argues that dismissal is warranted for failure to state a claim upon which relief can be granted.  ECF No. 44 at 26-27.

### A.     Estoppel Does Not Apply

Defendant argues that the SEC is estopped from arguing that a press release can ever trigger a SOX 304 claim because the SEC took a prior inconsistent position in SEC v. Mercury Interactive, LLC, No. C-07-2822 JF, 2010 WL 3790811 (N.D. Cal. Sep. 27, 2010).[5]

To invoke judicial estoppel, Bardman must show (1) that the SEC previously took a "clearly inconsistent" position with the one now expressed; (2) the earlier position was accepted

---

[5] Bardman has submitted a brief from the SEC in that case.  ECF No. 51, Ex. B at 21.

by the court to which it was presented; and (3) the SEC would stand to gain an "unfair advantage" by advancing its current position. New Hampshire v. Maine, 532 U.S. 742, 750-751 (2001); S.E.C. v. Jasper, 883 F. Supp. 2d 915, 927 (N.D. Cal. 2010), amended, 2010 WL 8898216 (N.D. Cal. Nov. 5, 2010), aff'd, 678 F.3d 1116 (9th Cir. 2012). Bardman argues that the SEC previously took the position in Mercury Interactive that a press release cannot be the triggering report for disgorgement pursuant to SOX 304. ECF No. 44 at 13; see Mercury Interactive, LLC, 2010 WL 3790811. The SEC argues, however, that its prior position was taken in such a different regulatory landscape that it cannot be said to contradict its position here. ECF No. 46 at 9. The Court agrees.

In Mercury Interactive, the defendant argued that it should not be liable under SOX 304 for statements about expense information in a Form 10-Q because the same statements had already been made in an earlier press release. Mercury Interactive, LLC, 2010 WL 3790811 at *5. The Court rejected that argument, agreeing with the SEC that the press release was not relevant to liability for the 10-Q because the press release did not affect the defendant's legal obligation to disclose the expense information in its Forms 10-K and 10-Q. Id. Significantly, at that time there was no requirement that a public company furnish, file or otherwise provide the SEC with copies of its press releases. So in Mercury Interactive, the SEC had to rely on Forms 10-Q and 10-K to bring a SOX 304 claim because those were the reports the defendant was required to file. Id. Given that companies were then not required to give their press releases to the SEC, there was nothing unusual about the SEC arguing, and the Mercury Interactive court finding, that the issuance of a press release before the filing of required reports with the SEC could not be the triggering event for purposes of SOX 304.

In March 2003, the Commission expanded the reporting obligations for publicly traded companies, making it mandatory for companies to furnish the SEC with copies of any press release that pertains to operations or financial conditions for a completed quarterly or annual fiscal period. Conditions for Use of Non-GAAP Financial Measures, Exchange Act Release No. 34-47225 68 Fed. Reg. 4820, 4825 (Jan. 22, 2003). Id. The purpose of the additional financial reporting requirement was to bring additional earnings information into the SEC's reporting

5

system. Id. If a company issues a press release concerning its financial condition, the company must furnish a Form 8-K to the SEC and attach the press release. Id.

Item 2.02 of the Form 8-K, added in 2003, now triggers a financial reporting requirement that did not exist at the time of that case. ECF No. 46 at 10. This significant regulatory change eliminates the basis of the SEC's argument in Mercury Interactive, such that that position is not "clearly inconsistent" with the position it takes here. Therefore, the SEC is not estopped from claiming the press release can trigger a SOX 304 claim.

### B. The Application of SOX 304

The parties disagree on the meaning of several terms in SOX 304, such as whether a Form 8-K counts as a financial report, whether it is a "filing" with the SEC, the meaning of "material noncompliance," and on what constitutes the "first public issuance or filing" with the SEC. See ECF No. 50 at 21.[6] The Court can resolve the motion by addressing two of these disagreements, as set forth below.

The full text of SOX 304 reads:

> (a) Additional compensation prior to noncompliance with Commission financial reporting requirements: If an issuer is required to prepare an accounting restatement due to the material noncompliance of the issuer, as a result of misconduct, with any financial reporting requirement under the securities laws, the chief executive officer and chief financial officer of the issuer shall reimburse the issuer for—(1) any bonus or other incentive-based or equity-based compensation received by that person from the issuer during the 12–month period following the first public issuance or filing with the Commission (whichever first occurs) of the financial document embodying such financial reporting requirement; and (2) any profits realized from the sale of securities of the issuer during that 12–month period.

15 U.S.C. § 7243 (2002).

---

[6] Bardman further argues that, if the Court will not adopt his constructions of these terms, SOX 304 is at least ambiguous such that the Court should apply the rule of lenity and resolve any ambiguities in his favor. See id. at 17-19.
 The rule of lenity applies to criminal and punitive statutes and requires ambiguities to be resolved in favor of the defendant. Fed. Election Comm'n v. Arlen Spector '96, 150 F. Supp. 2d 797 (E.D. Pa. 2001). Because the Court adopts Bardman's argument that the Form 8-K did not trigger the need for a financial restatement, the Court declines to decide whether application of the rule of lenity is appropriate on these facts.

6

Bardman argues that Logitech's material noncompliance with Item 2.02 in the April 27, 2011 Form 8-K did not directly "cause or result in" Logitech's later accounting restatement, and therefore it should not be used to trigger disgorgement. ECF No. 44 at 23-25. In support of this contention, he argues that only GAAP-compliant statements must be restated. Id. Therefore, because the Form 8-K is not required to conform to GAAP, Logitech's 2014 accounting restatement was not caused by and did not result from the Form 8-K. Id. The Court agrees that neither the press release nor the Form 8-K can be the basis of a SOX 304 claim because the material noncompliance on the Form 8-K did not cause or require Logitech to issue an accounting restatement.

The SEC responds that the same alleged misconduct resulted in material noncompliance on both the Form 8-K and the May 27, 2011 Form 10-K, so the SEC should be allowed to use both forms to compel disgorgement. ECF No. 46 at 18. At oral argument on the current motion, however, the SEC conceded that not every materially noncompliant 8-K could trigger an accounting restatement.[7] ECF No. 53. Specifically, in response to questioning by the Court, the SEC agreed that, had the Form 10-K filed in this case corrected the financial misstatements as presented in the press release attached to the Form 8-K, no restatement would have been required. Id. By the SEC's logic a press release containing financial misstatements only requires restatement for purposes of SOX 304 if the same, materially noncompliant information is subsequently issued on a financial reporting document requiring restatement, such as a Form 10-K. But in that event, it is hard to see how the Form 8-K compelled the restatement of anything, because it is the subsequently-issued report that is restated.

Bardman's position more closely tracks the logic of the statutory language. The SEC may bring a claim under SOX 304 "[i]f an issuer is required to prepare an accounting restatement due to the material noncompliance of the issuer." 15 U.S.C. § 7243(a). The issuer's misconduct itself, outside of the preparation of its financial statements, is not what establishes a claim. Rather, the

---

[7] The term "restatement" is a term of art in the accounting industry that most often refers to a company's obligation to correct any materially noncompliant information stated on a financial statement.

1   SOX 304 claim is based on the materially noncompliant form or forms that caused or resulted in
2   the restatement. Logitech restated its Form 10-K, not its Form 8-K, to come into compliance with
3   the securities laws. ECF No. 46 at 19-20. Therefore, the Form 8-K cannot be used as grounds for
4   a SOX 304 claim. The Court agrees with Bardman that misconduct reflected in a press release
5   furnished to the SEC pursuant to Item 2.02 on Form 8-K does not cause the filing of a restatement
6   within the meaning of SOX 304, and so the 8-K does not trigger a 12-month earnings
7   disgorgement period.

8   Bardman also argues that the SEC has failed to state a claim regarding Logitech's Form
9   10-K, and that it therefore does not trigger a disgorgement period, because the SEC never ordered
10  Logitech to restate it. ECF No. 44 at 26-27. Rather, Logitech restated it voluntarily. Id.
11  Bardman points to two out-of-circuit cases rulings that an issuer must be compelled or ordered to
12  prepare a financial restatement before liability can attach under SOX 304. SEC v. Shanahan, 624
13  F. Supp. 2d 1072 (E.D. Mo. 2008) and In re Cree, Inc. Sec. Litig., 1847004 WL 2005, at * 15
14  (M.D.N.C. Aug. 2, 2005).

15  A sibling court in this district has reached the opposite conclusion, holding that a
16  company's financial restatement is presumed to be a reaction to the securities laws and
17  regulations, absent any evidence to the contrary. Jasper, 883 F. Supp. 2d at 933–34. In Jasper, the
18  defendant acted as the CFO and Principal Accountant for Maxim (the issuer) during the alleged
19  backdating stock options scheme. Id. at 921. After the scheme was discovered, Maxim restated
20  its financials. Id. at 932. The defendant argued that the SEC never ordered Maxim to restate its
21  financials, so the company's noncompliance did not fall within the relevant statute. Id. at 933.
22  The court disagreed, reasoning that because the defendant did "not produce any evidence showing
23  that Maxim restated its financial statements for any reason other than being compelled to do so
24  under the securities laws and SEC regulations . . . it appears highly unlikely that the Company
25  would not have issued the restatements if it did not have to." Id. at 933-934.

26  The Court finds the reasoning of Jasper persuasive. Even absent an order to prepare a
27  financial restatement, it is reasonable to infer that a later voluntary restatement was prepared to
28  comply with the securities laws. Therefore, the Court concludes the SEC has sufficiently alleged

that Logitech's Form 10-K triggered a disgorgement period.[8]

## CONCLUSION

Bardman's motion to dismiss the SEC's First Amended Complaint is denied as it relates to the Form 10-K and granted as it relates to the Form 8-K.

IT IS SO ORDERED.

Dated:  February 8, 2017

_____
JON S. TIGAR
United States District Judge

---

[8] Bardman also suggests that accepting the SEC's interpretation of the financial reporting requirements will expose Bardman "to a potential reimbursement obligation for two separate and distinct but overlapping 12-month periods" stemming from the Form 8-K and the Form 10-K. ECF No. 50 at 16-17.  In light of the Court's conclusion that Logitech's 8-K will not support an SOX 304 claim, the Court need not reach this issue.